IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATE GUICE III,<br><br>   Plaintiff,<br><br>  vs.<br><br>CITY OF FAIRFIELD, a public entity; FAIRFIELD POLICE OFFICER THOMAS NO. 855, individually and in his official capacity; FAIRFIELD CHIEF OF POLICE BILL GRESHAM, individually and in his official capacity; and DOES 1 through 10, inclusive,<br><br>   Defendants.<br>_____/ | No. CIV S-06-1377 MCE EFB PS<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

  This action, in which plaintiff is proceeding *in propria persona*, was referred to the undersigned pursuant to Local Rule 72-302(c)(21). *See* 28 U.S.C. § 636(b)(1). The parties were before the undersigned on March 19, 2008, for hearing on defendants' February 7, 2008, motion for summary judgment. Mr. Guice appeared on his own behalf, and Kevin E. Gilbert appeared as defense counsel. Having heard oral argument and reviewed the submitted papers, the court recommends that defendants' motion be granted.

////

////

1

# I. FACTUAL BACKGROUND

Plaintiff filed this section 1983 civil rights complaint in state court. Defendants removed the case to this court on June 21, 2006. Plaintiff alleges deprivations of his constitutional rights in connection with his arrest for an illegal U-turn and for driving under the influence.

The court recounts the undisputed facts as presented by the parties in their respective declarations.[1] On March 26, 2005, plaintiff's vehicle was stopped after he made an illegal U-turn to avoid a sobriety checkpoint operated by the Fairfield Police Department. Declaration of Matt Thomas ("Thomas Decl."), ¶ 2. Officer Williams was posted near the checkpoint to observe vehicles that attempted to avoid the checkpoint. *Id*. He saw plaintiff make a U-turn just prior to the checkpoint and proceed in the opposite direction – a violation of Cal. Veh. Code § 22102.[2] *Id*., ¶ 3. Officer Williams effected a traffic stop on plaintiff, and called for a DUI officer to come to the scene. *Id*., ¶¶ 3, 4. Officer Thomas responded to the call. Officer Williams told Officer Thomas that plaintiff had been evasive and would not make eye contact, and that he believed there was something wrong with plaintiff. *Id.*, ¶ 4.

Officer Thomas observed plaintiff and had him perform various sobriety tests. *Id*., ¶¶ 5-10; Declaration of Tate Guice III ("Guice Decl."), ¶ 4. Officer Thomas avers that plaintiff's eyes were bloodshot and watery, but admits that he did not smell alcohol or any other incriminating odors. Thomas Decl., ¶ 5. Thomas declares that there was a "greenish-gray pasty substance on [plaintiff's] tongue, with raised bumps at the back," which Officer Thomas

---

[1] Neither party submitted a statement of undisputed or disputed facts as required under Local Rule 56-260. The court therefore bases its analysis on the submitted declarations.

[2] Section 22102 provides:

> No person in a business district shall make a U-turn, except at an intersection, or on a divided highway where an opening has been provided in accordance with Section 21651. This turning movement shall be made as close as practicable to the extreme left-hand edge of the lanes moving in the driver's direction of travel immediately prior to the initiation of the turning movement, when more than one lane in the direction of travel is present.

interpreted as a "sign of ingestion." *Id.*, ¶¶ 6, 10. Upon questioning, plaintiff denied using marijuana. *Id.*, ¶ 7; Guice Decl., ¶ 4. Officer Thomas checked plaintiff's heart rate and obtained a standing pulse of 124 beats per minute. Thomas Decl., ¶ 8. Thomas arrested plaintiff, and he was taken to the Fairfield Police Department for a drug recognition evaluation. Thomas Decl., ¶¶ 10-11. Plaintiff was issued a citation for violations of Cal. Veh. Code §§ 22102 (illegal U-turn), 14600(a) (failure to update address with DMV), and 23152 (driving under the influence).[3] *Id.*, ¶ 14. It was subsequently revealed that the drug tests were negative, and the Solano County District Attorney declined to prosecute plaintiff for driving under the influence. *Id.*, ¶ 15. Officer Thomas then issued an amended citation to plaintiff, removing the citation for driving under the influence. *Id.*, ¶ 16.

**II. PROCEDURAL HISTORY**

Plaintiff initiated this action, alleging that he was wrongly arrested for driving under the influence, and that the City of Fairfield endorses or promulgates a policy of making unlawful arrests. His prosecution of this case has been marked by his repeated violations of court orders and applicable rules of procedure. Upon removing the case to this court, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), to which plaintiff filed neither an opposition, nor a statement of non-opposition. The district judge granted defendants' motion, dismissing without leave to amend plaintiff's claims asserted under 42 U.S.C. § 1981, as well as his claims under the Fifth, Eighth and Fourteenth Amendments. The district judge also dismissed plaintiff's state law claims and his claim alleging violations under the First Amendment pursuant to 42 U.S.C. § 1983, but granted him leave to amend. *See* November 16, 2006, Memorandum and Order.

////

---

[3] Section 23152 provides, in relevant part: "[i]t is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle." Cal. Veh. Code § 23152(a).

1 After plaintiff failed to file an amended complaint based on that order, defendants filed 2 another motion to dismiss pursuant to Fed. R. Civ. P. 41(b), and requested that the court dismiss 3 those portions of the action that were not timely amended. Plaintiff failed to oppose or otherwise 4 respond to the motion. The court granted defendants' motion, dismissing plaintiff's state law 5 claims against the City of Fairfield and his First Amendment claim against all defendants. *See* 6 February 12, 2007, Memorandum and Order.

7 After defendants filed their answer and a status report, the court ordered plaintiff to file a 8 status report and cautioned him that failure to file the status report could result in the imposition 9 of sanctions and/or dismissal of the action. *See* Docket Entry no. 21, April 12, 2007. Plaintiff 10 responded by filing a status report a day after the date ordered by the district judge.

11 On August 27, 2007, defendants filed a "request" to dismiss plaintiff's claims pursuant to 12 Rule 41(b), or alternatively to set a status conference. Defendants based their request on 13 plaintiff's failure to keep the court and opposing counsel apprised of his current address, which 14 failure caused discovery served on plaintiff to be returned as undeliverable. *See* E.D. Cal. L.R. 15 83-183(b); 83-182(f) (requiring all parties, including those appearing *in propria persona*, to keep 16 the court and opposing counsel apprised of their current address).

17 In response to this request, the district judge set a show cause hearing for September 28, 18 2007. The court ordered plaintiff to submit an affidavit by September 17, 2007, regarding his 19 lack of activity in the case and providing reasons why the case should not be dismissed. From 20 the court's docket, it appears that plaintiff did not timely file an affidavit, but he did appear at the 21 hearing. The record shows that following the hearing, the district judge denied defendants' 22 request to dismiss for lack of prosecution. *See* Docket Entry no. 35, September 28, 2007.

23 After the district judge's order officially substituting plaintiff as counsel for himself was 24 returned as undeliverable on November 5, 2007, defendants filed a motion to compel discovery,
25 ////
26 ////

4

and alternatively to dismiss for lack of prosecution.[4]  Defendants filed an amended motion requesting additional discovery orders on November 8, 2007.

Pursuant to the district judge's pretrial scheduling order, discovery in this case was to be completed by October 19, 2007.  That order defined  "completed" to mean that "all discovery shall have been completed so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been obeyed." *See* June 6, 2007, Pretrial (Status) Scheduling Order. Accordingly, the undersigned denied the discovery portion of defendants' motion as untimely, but agreed to hear the portion of the motion requesting dismissal.

By and order and findings and recommendations dated January 8, 2008, the undersigned recommended against dismissal, but imposed sanctions on plaintiff for his repeated failures to abide by court orders and applicable rules.  The court also recommended against allowing plaintiff to amend his complaint, given his failure to show good cause therefor, and based on his continued delays in the action.  The district judge adopted those findings and recommendations on February 19, 2008.

In considering defendants' present motion for summary judgment, the court observes that in light of previous orders, the only remaining claims are plaintiff's § 1983 claims for false arrest and alleged violations of his Fourth Amendment right to be free from unreasonable searches and seizures, as well as his *Monell* claims against the City of Fairfield and Fairfield Chief of Police Bill Gresham.  *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691-94 (1978) (recognizing municipal liability under § 1983 for unconstitutional customs or policies).

////

////

---

[4] The attorney initially representing plaintiff in this case became ineligible to practice law in November 2006.  *See* Declaration of Kevin E. Gilbert in Response to Court's Order to Show Cause ("Gilbert Decl."), Ex. A (Docket Entry no. 31-2).

5

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of Fairfield, Officer Thomas, and Chief of Police Bill Gresham move for summary judgment. Defendants City of Fairfield and Gresham move for summary judgment on plaintiff's *Monell* claims. Defendant Thomas moves for summary judgment on plaintiff's § 1983 claims for false arrest and alleged violations of his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. He also moves for summary judgment on the basis of qualified immunity.

### A. Standard

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted). A complete failure of

6

proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

To withstand a motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson*, 477 U.S. at 250. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See* Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 248. Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

Here, the burden is on plaintiff to prove a Fourth Amendment violation by demonstrating a lack of probable cause to arrest him. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam). Similarly, with respect to his *Monell* claims, it is plaintiff's burden to demonstrate an unconstitutional policy, practice or custom promulgated or endorsed by the City of Fairfield or Police Chief Gresham.

**B. Defendants' Objections to Plaintiff's Evidence**

Defendants object to the admissibility of plaintiff's affidavit in support of his opposition to their summary judgment motion. In particular, they argue that plaintiff's averments regarding statements attributed to Officer Thomas are inadmissible hearsay. The objections are overruled.

First, the statements at issue meet the definitional exclusion from hearsay as party-opponent admissions and are therefore not hearsay. *See infra*; Fed. R. Evid. 801(d)(2). Second, it

is not entirely clear whether plaintiff offers those statements for their truth, or for some other purpose, such as evidence of Officer Thomas's state of mind at the time of the arrest. *See* Fed. R. Evid. 801(c) (statements are hearsay only if offered for the truth of the matter asserted).

Further, with respect to the nature of this proceeding, "the court cannot ignore the fact that a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial." *See Burch v. Regents of the University of California*, 433 F. Supp.2d 1110, 1121 (E.D. Cal. 2006). The court thus "treat[s] the opposing party's papers more indulgently than the moving party's papers." *Id.* (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). While a court need not ignore the evidentiary ramifications of a declaration based nearly entirely on hearsay, *see id.*, at 1121 (noting that the Ninth Circuit does not uniformly apply the principle of indulgence), it is noteworthy that plaintiff proceeds without counsel. Furthermore, he does not rely on evidence which on its face presents evidentiary obstacles which would prove insurmountable at trial. *See id.*, at 1122 (noting that, at trial, "when a party raises valid evidentiary objections, the opposing party will have an opportunity to present the evidence in an alternative and admissible form."). Insofar as there may be valid hearsay objections, they would be better left for trial, if there is to be one.

**C.  *Monell* Claims**

Plaintiff brings claims against the City of Fairfield and Chief of Police Gresham under § 1983 for an alleged failure to train and supervise Fairfield police officers, and for an alleged policy of authorizing unjustified arrests, such as the one allegedly experienced by plaintiff. *See, e.g.*, Notice of Removal, Ex. A (Compl.), ¶¶ 4, 19, 20.

"Local governments are only liable under § 1983 for constitutional torts that amount to a custom or policy." *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) (citing *Monell*, 436 U.S. at 691). "Proof of random acts or isolated events does not satisfy the plaintiff's burden to establish a custom or policy." *Id.* (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989)).

8

A plaintiff can establish municipal liability in one of three ways. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may show that the individual who committed the constitutional tort was an official with final policy-making authority such that the alleged tort itself constituted an act of official governmental policy. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (internal quotations omitted). Third, the plaintiff may establish that such an official ratified a subordinate's unconstitutional act. *Id.* at 1346-47 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988) (plurality opinion)).

"After proving that one of the three circumstances existed, a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981); *see also City of Springfield v. Kibbe*, 480 U.S. 257, 266-68 (1987) (discussing causation requirement in section 1983 municipal liability cases)." *Id.*

Here, plaintiff has pointed to no evidence of an official policy or custom. Neither does he present evidence that Officer Thomas was a policymaking official, or that Chief Gresham or the City ratified an unconstitutional act. Plaintiff conceded at the hearing that Chief Grehsam was only named in connection with his *Monell* claims and played no role in the arrest at issue. Such a complete failure of proof renders all other facts immaterial, and entitles defendants City of Fairfield and Chief of Police Gresham to summary judgment.[5] *Celotex*, 477 U.S. at 322.

---

[5] The court recognizes that plaintiff has not conducted much discovery in this action, but concludes that this is due to his lack of diligence, as discussed above. Moreover, plaintiff has not filed a Rule 56(f) motion in response to the present motion for summary judgment. Even if he had filed such a motion, a party's failure to diligently pursue discovery does not justify an extension of the discovery deadline or further delays in adjudication of the case. *See Chance v.*

### D. **Probable Cause**

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *United States v. Watson*, 423 U.S. 411, 417-424 (1976)) (internal quotations omitted). To prevail on a § 1983 claim for false arrest a plaintiff must demonstrate that there was no probable cause to arrest him. *Cabrera*, 159 F.3d at 380.

"Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (quoting *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992)). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

"Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 505 F.3d 907, 911 (9th Cir. 2007) (citing *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). "It is essential to avoid hindsight analysis, i.e., to consider additional facts that became known only after the arrest was made." *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)).

---

*Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161, n. 6 (9th Cir. 2001) (noting that a party filing a Rule 56(f) motion bears the burden to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment, and holding that the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920 (9th Cir. 1996)). Plaintiff has made no such showing here and cannot legitimately contest the court's conclusions about his lack of diligence. *See infra*, Section I.

1    Further, as a general matter, "'an officer need not have probable cause for every element
2 of the offense.'" *Lopez*, 482 F.3d at 1072 (only when specific intent is a required element of the
3 offense must the arresting officer have probable cause for that element in order to reasonably
4 believe that a crime has occurred) (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.
5 1994)).  Here, section 23152 of the California Vehicle Code (driving under the influence) is a
6 general criminal intent statute requiring a general intent to drive, not a specific intent to drive a
7 vehicle while knowingly under the influence.  *People v. Lujan*, 192 Cal.Rptr. 109, 116 (Cal. App.
8 Dep't Super. Ct. 1983).

9    The Supreme Court has recently provided additional gloss on the constitutionality of
10 warrantless arrests in the case of *Virginia v. Moore*, 553 U.S. __ , 2008 U.S. Lexis 3674 (Apr. 23,
11 2008). In *Moore*, the Court reversed a judgment by the Virginia Supreme Court, finding that an
12 arrest based on probable cause, but prohibited by state law, was constitutional. In *Moore*, the
13 respondent, Moore, was initially arrested for driving on a suspended license. A subsequent search
14 yielded crack cocaine, and Moore was charged with possessing cocaine and convicted. The state
15 supreme court reversed Moore's conviction, holding that the search was unlawful and that the
16 cocaine should have been suppressed. The Virginia Supreme Court reasoned that under state law
17 driving on a suspended license was not an arrestable offense, and therefore, the officers should
18 have merely issued Moore a citation and summons instead of arresting him. *Id.*, at *4-6. The
19 U.S. Supreme Court reversed, holding that the search was lawful under the Fourth Amendment,
20 and confirming that the parameters of the Fourth Amendment's protections are federally
21 determined. *Id.*, at *21.

22   The Court wrote that "when an officer has probable cause to believe a person committed
23 even a minor crime in his presence, the balance is not in doubt. The arrest is constitutionally
24 reasonable." *Id.*, at *12 (citing *Atwater v. Lago* Vista, 532 U.S. 318, 354 (2001)). The Court
25 further rejected Moore's argument that even if the arrest was constitutional, the search was not. It
26 noted its prior holdings that "officers may perform searches incident to constitutionally

11

permissible arrests," and concluded that "[t]he interests justifying search are present whenever an officer makes an arrest." *Id*., at *21-22.

Again, in this case, plaintiff does not dispute making the illegal U-turn before arriving at the sobriety checkpoint, but rather challenges his arrest for driving under the influence and argues that the subsequent search of his car and person violated the Fourth Amendment. *See* Pl.'s Opp'n, 3:6-7. As recounted above, plaintiff disputes very few of the facts established by defendants in their motion for summary judgment. Indeed, each party's version of the facts differs only with respect to the circumstances surrounding the sobriety tests administered by Officer Thomas.

Thomas declares that when he observed plaintiff's eyes, he did not see any horizontal or vertical nystagmus, but that a lack of convergence was present.[6] *Id.*, ¶ 6. Plaintiff does not directly dispute this. Thomas also avers that plaintiff's eyes were "compacted and slow to react to light." *Id*., ¶ 8. Thomas declares that there was a "greenish-gray pasty substance on [plaintiff's] tongue, with raised bumps at the back," which Officer Thomas interpreted as a "sign of ingestion." *Id*., ¶¶ 6, 10. Officer Thomas checked plaintiff's heart rate and obtained a standing pulse of 124 beats per minute. Thomas Decl., ¶ 8. Plaintiff does not dispute these facts either.

Thomas also declares that he had plaintiff perform the "walk-and-turn test," and avers that plaintiff "missed touching heel-to-toe on several steps." *Id*., ¶ 9. He submits that plaintiff's "foot got hung up and he staggered on several steps and on one occasion he stepped on the front of his foot as he was walking down the line." *Id*. Thomas declares that, based on "the signs of ingestion, [plaintiff's] performance on the walk-and-turn test, and the physiological symptoms he displayed at the scene together with my training and experience as a sworn officer, I formed the opinion that Guice was under the influence of a drug and placed him under arrest." *Id*., ¶ 10.

---

[6] At the hearing, defense counsel explained that this was significant as a sign of intoxication. *See State v. Stiles*, 998 P.2d 703, 704-05 (Or. Ct. App. 2000) (describing "lack of convergence test" in determining marijuana intoxication).

Plaintiff counters with a sworn declaration that Thomas informed him that he "had passed his field sobriety tests but believed that [plaintiff] had something to hide because [he] evaded the sobriety checkpoint." Guice Decl., ¶ 5. Plaintiff declares that he became irritated with Officer Thomas's accusatory tone and demanded that he be allowed to leave. *Id*. Plaintiff avers that Officer Thomas then requested plaintiff's consent to search his vehicle, which plaintiff refused to give. *Id*., ¶ 6. Plaintiff states that Thomas told him if he had nothing to hide, he would consent to the search. *Id*. Plaintiff did not consent, and avers that Thomas told him that no consent would be necessary if he arrested plaintiff for DUI. *Id.*, ¶ 7. Plaintiff states that Thomas told him the car would then be searched "incident to the tow for inventory purposes," and that plaintiff should just give his consent so that he could be on his way. *Id*. Plaintiff avers that he told Officer Thomas that he would sue if he was falsely arrested for DUI, upon which Officer Thomas arrested him. *Id*.

Again, plaintiff does not specifically dispute Officer Thomas's statements pertaining to observations about plaintiff's evasive behavior, elevated heart rate, bloodshot, watery eyes, or the pasty substance observed on his tongue. Rather, the only evidence presented by plaintiff is his sworn affidavit that Officer Thomas told him he had passed the field sobriety tests but "believe[d] that [he] had something to hide because of [he] had evaded the security checkpoint." Guice Decl., ¶ 5. Plaintiff also swears that Officer Thomas was going to let him leave the scene if plaintiff consented to have his vehicle searched. Guice Decl. ¶¶ 5-7. When plaintiff refused to consent to a search, he argues that the DUI arrest was made merely as a pretext to conduct the search, and was therefore not based on probable cause.

Even assuming this is true, Officer Thomas's subjective intent in making the arrest is "immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *Lopez*, 482 F.3d at 1072. That is, regardless of what Officer Thomas's intentions were with respect to his decision to arrest plaintiff, the court only examines the objective facts to determine whether his actions were reasonable. The court does not make credibility determinations or

13

weigh conflicting evidence at the summary judgment phase of litigation, and must draw all inference in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 249, 255. "On the other hand, the movant's uncontradicted factual allegations ordinarily are accepted." *City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008) (citing *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952-53 (9th Cir. 1978)).

Here, plaintiff urges the court to construe Thomas's alleged statements regarding the sobriety tests as demonstrating a lack of probable cause to arrest him for driving under the influence. However, even accepting that allegation as true plaintiff has offered no evidence to contradict other objective factors sworn to by Officer Thomas, which show an independent basis for probable cause.

Importantly, the statements attributed to Thomas by plaintiff do not directly contradict Thomas's averments regarding plaintiff's purposeful, illegal evasion of a sobriety checkpoint, plaintiff's elevated pulse rate, his bloodshot, watery eyes, their convergence and slow reaction to light, or the greenish substance on plaintiff's tongue. Thomas Decl., ¶¶ 6, 8, 9, 10. Moreover, plaintiff does not himself aver that he performed well on the sobriety tests, nor does he directly contradict or challenge Thomas's declaration that plaintiff performed poorly. Rather, plaintiff only declares that Thomas told him he passed the tests.

Thus, the only disputed fact is whether or not Thomas told Guice that he had passed the tests. However, that dispute is not material to probable cause. Thus, Guice's averments to this effect simply fail to demonstrate a genuine, material factual dispute regarding probable cause. *Anderson*, 477 U.S. at 248-50. Indeed, Guice's declaration that Officer Thomas told him he passed but believed he "had something to hide because [he] evaded the sobriety checkpoint" Guice Decl., ¶ 5, supports a finding of probable cause. That statement indicates that, based on the circumstances known to Officer Thomas, and regardless of the sobriety tests, there was reason to believe that plaintiff was intoxicated or was covering up some other illicit activity. In the considered judgment of Officer Thomas, it was more likely than not that this was the case. This

was a reasonable conclusion, even construing the facts in the light most favorable to plaintiff.

Assuming that Thomas told Guice that he had passed the sobriety tests and tried to bully him into consenting to a search, there were still other, undisputed, objective factors present to support plaintiff's arrest. First and foremost, plaintiff had committed a crime in the officers' presence. Second, the very nature of the crime in this case – making an illegal U-turn to avoid a sobriety checkpoint – is a highly relevant factor in considering the overall reasonableness of the arrest. Third, upon examination, plaintiff was evasive, had bloodshot, watery eyes, and exhibited other signs of marijuana use. Finally, plaintiff's own declaration tends to show that Thomas believed plaintiff was committing a crime.

Under these circumstances, a reasonable person could have concluded that there was a fair probability that plaintiff had committed a crime, and more specifically, that he was driving under the influence of some intoxicant. *Buckner*, 179 F.3d at 837; *City of El Monte*, 515 F.3d at 941 (citations and quotations omitted).[7] It does not matter that subsequent drug tests proved negative. *See Devenpeck*, 543 U.S. at 152 ("Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"); *City of El Monte*, 515 F.3d at 940 ("It is essential to avoid hindsight analysis, i.e., to consider additional facts that became known only after the arrest was made."). Nor does it matter what Thomas's subjective intent was in making the arrest. *Lopez*, 482 F.3d at 1072. Here, plaintiff was arrested and cited for committing three crimes. Even plaintiff's version of events show that the arrest was reasonable and supported by probable cause.

### E. Qualified Immunity

Assuming a reasonable jury could find that a constitutional violation was committed by Officer Thomas, which, as discussed, it could not, he is entitled to qualified immunity.

---

[7] Furthermore, in light of the Supreme Court's elucidations in *Moore*, it appears irrelevant whether plaintiff was arrested for the U-turn or for driving under the influence. If that is indeed the case, then plaintiff has conceded the issue and admits to the existence of probable cause.

15

1    Under the doctrine of qualified immunity, even if a governmental official violated a
2 constitutional right, he may be immune from liability if his conduct "does not violate clearly
3 established statutory or constitutional rights of which a reasonable person would have known."
4 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether a defendant is entitled to
5 qualified immunity, courts engage in a two-step inquiry.  The first step is to ask, "[t]aken in the
6 light most favorable to the party asserting the injury, do the facts alleged show the officer's
7 conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  If not, the
8 qualified immunity analysis ends there.  *Id.*, at 201.  Assuming, on the other hand, that a violation
9 is established, "the next sequential step is to ask whether the right was clearly established."  *Id.*

10    The inquiry as to this second question must be "particularized."  *Burdett v. Reynoso*, No.
11 C-06-00720 JCS, 2007 U.S. Dist. LEXIS 64871, at *59-60 (N.D. Cal. Aug. 23, 2007) (citing
12 *Saucier*, 533 U.S. at 201).  "The relevant dispositive inquiry in determining whether a right is
13 clearly established is whether it would be clear to a reasonable officer that his conduct was
14 unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 201.

15    "Where a plaintiff asserts a Fourth Amendment violation based on the absence of probable
16 cause, the relevant inquiry with respect to the clearly established prong of the qualified immunity
17 analysis is whether a *reasonable* officer could have believed that probable cause existed to arrest
18 the plaintiff."  *Burdett*, 2007 U.S. Dist. LEXIS 64871, at * 60 (citing *Franklin v. Fox*, 312 F.3d
19 423, 438 (9th Cir. 2002)) (emphasis added) (internal quotations omitted).  Thus, "[e]ven law
20 enforcement officials who reasonably but mistakenly conclude that probable cause is present are
21 entitled to immunity."  *Burdett*, 2007 U.S. Dist. LEXIS 64871, at * 60 (quoting *Hunter v. Bryant*,
22 502 U.S. 224, 227 (1991) (per curiam)).  "The United States Supreme Court has noted that the
23 qualified immunity standard gives ample room for mistaken judgments by protecting all but the
24 plainly incompetent or those who knowingly violate the law."  *See Peng v. Hu*, 335 F.3d 970, 976
25 (9th Cir. 2003) (citing *Hunter,* 502 U.S. at 229) (quotations omitted).
26 ////

Here, there were several objective indicators supporting a reasonable belief that probable cause existed to arrest plaintiff for violating Cal. Veh. Code § 23152 (driving under the influence of a drug or alcohol). It is undisputed that at the time of the incident in question, there was a clearly established right to be free from unreasonable searches and seizures. However, the situation confronted by Officer Thomas presented enough objective circumstances for him to conclude there was probable cause to arrest plaintiff for driving under the influence.

Officer Thomas was called to the scene as a "DUI officer" by another officer who observed plaintiff make an illegal U-turn to avoid a sobriety checkpoint. The officer who effected the stop informed Thomas of plaintiff's avoidance of eye contact and evasive behavior, and told Thomas he thought there was something wrong with plaintiff. Officer Thomas observed that plaintiff's eyes were bloodshot and watery, slow to react to light, and that convergence was present. He observed that plaintiff had an elevated heart rate, and that there was a green pasty substance at the back of his tongue indicating ingestion. Based on his experience and training, Officer Thomas concluded that under the totality of the circumstances, there was probable cause to conclude that plaintiff was under the influence of a drug. This was a reasonable conclusion, even though plaintiff ultimately did not test positive for any drugs. Thus, the court finds that Officer Thomas's conclusion that probable cause existed was reasonable under the circumstances.

Furthermore, the court finds that regardless of the DUI charges, there was probable cause to arrest plaintiff for making the illegal U-turn, and that any subsequent search was therefore lawful under the Fourth Amendment. *See Moore, supra,* 553 U.S. __ (Apr. 23, 2008). Accordingly, the court finds that Officer Thomas is entitled to qualified immunity.

**III. CONCLUSION**

In accordance with the foregoing, IT IS RECOMMENDED that:

1. Defendants' February 7, 2008, motion for summary judgment be granted as to the claims against the City of Fairfield and Fairfield Chief of Police Bill Gresham;

////

2. Defendants' February 7, 2008, motion for summary judgment be granted as to the claims against defendant Thomas; and,

3. The Clerk be directed to enter judgment in defendants' favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: May 8, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE